GREG L. KIRAKOSIAN (SBN 294580)
[GREG@KIRAKOSIANLAW.COM]
**KIRAKOSIAN LAW, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE: (213) 417-9790
FACSIMILE:  (213) 477-2355

Attorneys for Plaintiffs, *JIMMY WONG* and *CAROL CHAPMAN* individually and as successors in interest to *MATTHEW WONG*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY WONG, individually and as successor; and CAROL CHAPMAN, individually and as successor,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF PLACENTIA, a public entity; and DOES 1 – 20, inclusive,<br><br>Defendants. | **CASE NO.: 8:22-cv-00798**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. Unlawful Detention and Arrest (42 U.S.C § 1983);<br>2. Unreasonable Search and Seizure – Excessive Force (42 U.S.C § 1983);<br>3. Fourteenth Amendment – Substantive Due Process;<br>4. Municipal Liability - Unconstitutional Custom, Practice, or Policy, Ratification, and Failure to Train (42 U.S.C § 1983);<br>5. Battery – Wrongful Death and Survival);<br>6. Negligence – Wrongful Death and Survival); and<br>7. Violation of Bane Act (Cal. Civil Code § 52.1)<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

Plaintiffs JIMMY WONG and CAROL CHAPMAN, individually and as the successor in interest to Decedent MATTHEW WONG, hereby bring this Complaint against Defendants CITY OF PLACENTIA and DOES 1 – 20, inclusive, and allege as follows:

## INTRODUCTION

1. This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal officer-involved shooting of Plaintiffs' son ("Decedent") Matthew Wong on May 29, 2021.

## PARTIES

2. At all relevant times, Plaintiff JIMMY WONG was and is an individual rising in the City of Placentia, County of Orange, California. Plaintiff was the father of Decedent Matthew Wrong and is his successor in interest under state and federal law.

3. At all relevant times, Plaintiff CAROL CHAPMAN was and is an individual rising in the City of Placentia, County of Orange, California. Plaintiff was the mother of Decedent Matthew Wrong and is his successor in interest under state and federal law.

4. At all relevant times, MATTHEW WONG ("Decedent"), deceased, was an individual residing in the City of Placentia, County of Orange, California

5. Jimmy Wong and Carol Chapman ("Plaintiffs") were individuals residing in the City of Placentia, County of Orange, California.

6. At all relevant times, Defendant CITY OF PLACENTIA (the "CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Placentia Police Department ("PPD") and its agents and employees. At all relevant times, Defendant CITY was responsible for

assuring that the actions, omissions, policies, procedures, practices, and customs of the PPD and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, CITY was the employer of Defendants DOES 1-20.

7. Defendants DOES 1-10 ("DOE OFFICERS") are police officers working for the CITY and PPD. At all relevant times, DOE OFFICERS were acting under color of law within the course and scope of their duties as police officers for the CITY and PPD. At all relevant times, DOE OFFICERS were acting with the complete authority and ratification of their principal, Defendant CITY.

8. Defendants DOES 11-20 are managerial, supervisorial, and policymaking employees of the CITY/PPD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the CITY/PPD. DOES 11-20 were acting with the complete authority and ratification of their principal, Defendant CITY.

9. On information and belief, at all relevant times, DOES 1-20 were residents of Orange, California. DOES 1-20 are sued in their individual capacity and Plaintiffs do not seek punitive damages against the CITY.

10. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOE OFFICERS were acting on the implied and actual permission and consent of Defendants DOES 11-20 and the CITY.

11. In doing the acts and failing and omitting to act as hereinafter described, Defendant DOES 1-20 were acting on the implied and actual permission and consent of the CITY.

12. At all relevant times, Defendants DOES 1-20 were duly authorized employees and agents of the CITY, who were acting under color of law and within the course and scope of their employment as CITY Police Officers and with the complete authority and ratification of their principal, Defendant CITY.

13. At all relevant times, Defendant DOES 1-20 were duly appointed officers

and/or employees or agents of CITY, subject to oversight and supervision by CITY's elected and non-elected officials.

14. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-20 were acting on the implied and actual permission and consent of CITY.

15. The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-20, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

16. At all times mentioned herein, each and every Defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

17. All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

18. On November 11, 2021, Plaintiffs WONG and CHAPMAN filed comprehensive and timely claims for damages with the CITY pursuant to applicable sections of the California Government Code. These claims were subsequently rejected.

## JURISDICTION AND VENUE

19. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims

are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

20. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

21. Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

22. At the time of the shooting and wrongful death giving rise to this lawsuit, Decedent was a 33-year-old male with visible and obvious signs of mental illness and incapacity.

23. Plaintiffs Jimmy Wong and Carol Chapman's claims arise out of the brutal assault, battery, excessive force, wrongful seizure, and other claims enumerated herein that ultimately resulted in the wrongful death of Matthew James Wong, Plaintiffs' son, on May 29, 2021, at or about 1:10 a.m. to 1:33 a.m., at or near 860 North Rose Drive in the City of Placentia.  Specifically, DOE OFFICERS needlessly escalated an otherwise routine stop by shooting multiple rounds of projectile weapons on a clearly mentally disabled individual and ultimately shooting and killing Matthew James Wong.

24. On or about May 29, 2021, at or about 1:10 a.m., Decedent, Matthew Wong, was alone, sitting inside his vehicle, in a vacant parking lot, behind a closed and vacant building, when he was suddenly approached by an unknown DOE OFFICER without any reasonable suspicion or probable cause that Decedent was engaged in any criminal activity.

25. On information and belief, responding DOE OFFICER had no information that any serious crime was in progress, that any violent crime had been committed, that anyone was injured, that any threats had been made, or that the DECEDENT was armed. This was a type of situation that offers routinely encounter.

26. DOE OFFICER parked his vehicle behind Decedent, who was effectively blocked in an had nowhere to go. DOE OFFICER approached Decedent's vehicle and made numerous unlawful demands that Decedent roll down his vehicle and/or exit the vehicle.

27. During the initial encounter, Decedent was visibly and clearly having difficulty in complying with instructions and was unable to comply due to mental disturbances and inabilities. During these interactions, it was evident that Decedent was not coherent and not in a normal state of mind and exhibiting clear signs of mental/emotional disturbances, mental illness, disability, and/or being under the influence.

28. During this initial encounter, Decedent attempted to comply with commands to roll down his window, but was clearly unable to comply, confused, and having difficulty due to mental disturbances, disabilities, inabilities. During these interactions, DOE OFFICER repeatedly made comments about Decedent's odd and confusing behavior, including inability to comply with commands and asked, "What is wrong with you."

29. Thereafter, DOE OFFICER called for backup and additional DOE OFFICERS responded to the scene. Upon the additional DOE OFFICERS' arrival, Decedent was surrounded by approximately eight to twelve additional officers who had taken defensive positions behind their vehicles that surrounded and blocked in the Decedent.

30. At all relevant times, there had been no calls for help, or 911 calls related to the Decedent engaging in any violent behavior. At all relevant times, Decedent had not engaged in any aggressive or violent behavior, showed clear signs of mental disturbances and inabilities to comply with commands, and was merely passively resisting by failing and/or being unable to roll down his window or exit the vehicle. At all relevant times, Decedent was alone in his vehicle, in a vacant area, surrounded by walls, police vehicles that had been positioned in a defensive position to block

**COMPLAINT FOR DAMAGES**

Decedent's escape, and numerous officers in a defensive position behind their police vehicles.

31. While Defendant was surrounded, Decedent continued to exhibit signs of that he was not coherent and not in a normal state of mind and exhibiting clear signs of mental/emotional disturbances, mental illness, disability, and being under the influence. He continued to roll-up and roll-down his window, turned his car on and off, and was acting in a manner that was clearly exhibited a person suffering from a mental illness or disability. At one point, when DOE OFFICERS demand that he raise his hands above his head, Decedent was visibly looking at his hands in confusion and exhibiting clear signs of an inability to comply with demands.

32. Given the circumstances and in light of Placentia Police Department's Policy Manual, alternative tactics were readily available to the DOE OFFICERS and the use of force by DOE OFFICERS was unnecessary and unreasonable. Rather than summoning additional resources, such as crisis intervention techniques by properly trained personnel, DOE OFFICERS continued to simply scream the same commands at the Decedent who was unable to comply.

33. Rather than formulating a plan without the use of force, DOE OFFICERS waited approximately ten minutes before they developed a plan, which was authorized and ratified by DOES 11-20, to escalate an otherwise peaceful encounter drastically and exponentially into one involving the use of serious force.  Specifically, DOE OFFICERS and DOES 11-20 planned and deployed projectile weapons at the Decedent's head, who was visibly suffering from mental disability, distress, and inabilities.

34. Prior to the DOE OFFICERS use of projectile weapons aimed directly at Decedent's head, the Decedent neither attempted to nor did he commit any violent act, threaten to commit any violent act, or inflict any injury on anyone. At all relevant times, Decedent remained seated in his vehicle.  Prior to the DOE OFFICERS use of projectile weapons at Decedent's head, Decedent was unable to escape, exhibited no signs of

threatening behavior, and no person was in danger of being harmed by the Decedent.

35. Along with the clear signs of mental incapacity, there was no apparent immediacy and severity of threat to the officers, the Decedent was cornered in his vehicle and had no reasonable means of escape, there was no serious crime or offense committed or suspected, there was no potential for injury to officers, suspects, bystanders, or others, and the Decedent was not physically resisting, attempting to flee, or attacking any officers,

36. During the DOE OFFICERS' third attempt of shooting projectile rounds at the Decedent's head, the Decedent suffered from physical and emotional injuries and pain and suffering.

37. The acts of DOE OFFICERS, including shooting multiple rounds of projectile weapons at Decedent's head and ultimately fatally shooting Decedent while he was the middle of a mental health crisis, failing to de-escalate and unreasonably escalating a situation involving an individual clearly suffering a mental health crisis, and failing to utilize non-force or less than lethal options available to them, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution.

38. When exercising ordinary care and when properly trained to respond to the types of situations that officers routinely encounter, reasonable peace officers do not fire at vehicles in an effort to disable the driver, force the driver to exit the vehicle, or gain any tactical advantage in the circumstances. When exercising ordinary care and when properly trained, reasonable peace officers refrain from shooting at vehicles and instead prevent themselves from being in the path of the vehicle and/or move out of the way of the vehicle so as to refrain from shooting into a vehicle.

39. After the Decedent, who was mentally disabled and suffered from mental incapacity, was needlessly shot at in the head by several projectile weapons, the DOE OFFICERS believed that the Decedent had returned fire upon them. DOE OFFICERS immediately shot live rounds at the Decedent and caused his death.

# FIRST CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Unlawful Detention and Arrest**

**(42 U.S.C. § 1983)**

(By Plaintiffs Against All Defendants)

40. Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

41. The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable detention in violation of their right to privacy. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right. Defendant DOE OFFICERS violated Decedent's right to be free from unreasonable search and seizures, which is guaranteed to him by the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

42. At all relevant times, the DOE OFFICERS acted under color of state law. DOE OFFICERS had no reasonable suspicion to detain Decedent and no probable cause to arrest him. In addition to the detention itself being unreasonable, the scope and manner of the detention was unreasonable. It was not necessary to use force against Decedent to take him into custody, if that were even necessary.

43. Plaintiffs are informed and believe that Defendants conduct violated their training and standard police officer training.

44. The acts of DOE OFFICERS, including shooting multiple rounds of projectile weapons at Decedent's head and ultimately fatally shooting Decedent while he was the middle of a mental health crisis, failing to de-escalate and unreasonably escalating a situation involving an individual clearly suffering a mental health crisis, and failing to utilize non-force or less than lethal options available to them, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution.

45. The conduct of the DOE OFFICERS was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of

Decedent and therefore warrants the imposition of exemplary and punitive damages as to the individual DOE OFFICERS. As a direct result of the unreasonable detention and arrest, Decedent experienced severe pain, suffering and the loss of life and enjoyment of life, for which he, through his successor in interest, is entitled to recover damages.

46. Plaintiffs WONG and CHAPMAN bring this claim as a successor-in-interest to Decedent. Plaintiffs seeks survival damages on this claim, including for Decedent's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life. Plaintiffs also seek attorney's fees under this claim.

## SECOND CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Excessive Force**

**(42 U.S.C. § 1983)**

(By Plaintiffs Against All Defendants)

47. Plaintiffs repeat and re-allege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

48. As alleged herein, Defendants used excessive force against Decedent when they violently and forcefully escalated an otherwise peaceful encounter into one with the use of extreme force. Specifically, Defendants shot numerous projectile rounds upon Decedent's head, who was already suffering from mental disability and incapacity, ultimately causing him to sustain significant head trauma, concussions, and other bodily injuries, furthering his mental incapacity.

49. The foregoing conduct was without justification or probable cause. Defendants' unjustified excessive use of force deprived Decedent of his right to be secure in his person against unreasonable use of force as guaranteed under the Fourth and Fourteenth Amendment.

50. As a result of the foregoing, Decedent suffered great physical pain and emotional distress up to the time of his death at the hospital after the shooting, loss of enjoyment of life, loss of life, and lost earning capacity.

51. Based on the facts readily available and known to Defendants, no reasonable conclusion could be drawn that force, let alone the extreme degree of force used, was reasonable. No objective facts readily available and known to Defendants could have reasonably led them to conclude that escalating the situation with the use of projectile rounds upon the face and head of mentally disabled person sitting in their vehicle was the appropriate means to gain compliance. At no point prior to the use of such force could Defendants have reasonably determined that Decedent was a threat requiring the use of such harmful and excessive force. As a result of the foregoing, Plaintiffs suffered great physical injuries and emotional distress. Further, Defendants' actions and use of force violated their training and standard police officer training.

52. Plaintiffs are informed and believe that Defendants conduct violated their training and standard police officer training.

53. The acts of DOE OFFICERS, including shooting multiple rounds of projectile weapons at Decedent's head and ultimately fatally shooting Decedent while he was the middle of a mental health crisis, failing to de-escalate and unreasonably escalating a situation involving an individual clearly suffering a mental health crisis, and failing to utilize non-force or less than lethal options available to them, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution.

54. The conduct of the DOE OFFICERS was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Decedent and therefore warrants the imposition of exemplary and punitive damages as to the individual DOE OFFICERS. As a direct result of the unreasonable detention and arrest, Decedent experienced severe pain, suffering and the loss of life and enjoyment of life, for which he, through his successor in interest, is entitled to recover damages.

55. Plaintiffs WONG and CHAPMAN bring this claim as a successor-in-interest to Decedent. Plaintiffs seeks survival damages on this claim, including for Decedent's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life. Plaintiffs also seek attorney's fees under this claim.

## THIRD CLAIM FOR RELIEF

**Fourteenth Amendment-Substantive Due Process (42 U.S.C. § 1983)**

(By Plaintiffs Against All Defendants)

56. Plaintiffs hereby reallege and incorporate by reference herein all preceding paragraphs of this Complaint as though fully set forth herein.

57. DOE OFFICERS and DOES 11-20 acted under color of state law at all relevant times.

58. By engaging in the foregoing conduct, DOE OFFICERS deprived Plaintiffs of their rights to a familial relationship with Decedent in such a manner as to shock the conscience, including by using excessive and unreasonable force to escalate (rather than de-escalate) and use deadly force against him, all of which caused injuries that resulted in Decedent's death. This conduct violated Plaintiffs' rights, privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

59. By engaging in the foregoing conduct, DOE OFFICERS acted with deliberate indifference to the constitutional rights of Decedent and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective. DOE OFFICERS are liable to Plaintiffs for the interference with their familial relationship.

60. All Plaintiffs bring this claim individually and seek wrongful death damages under this claim. Plaintiffs also seek attorney's fees under this claim.

## FOURTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy, Ratification, Failure to Train (42 U.S.C. § 1983)**

(By Plaintiffs against Defendants CITY and DOES 11-20)

61. Plaintiffs repeat and re-allege each and every allegation in preceding paragraphs of their Complaint with the same force and effect as if fully set forth herein.

62. At all relevant times, Defendant Officers acted under color of law. The acts

of the Defendant Officers violated Plaintiff's rights under the United States Constitution and the First, Fourth, and Fourteenth Amendment.

63. Upon information and belief, DOES 11 through 20 were supervisors and final policymaker, acting under color of law, who had final policymaking authority concerning the acts of DOES 1 through 10, ratifying the Defendant Officers acts and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of the Defendant Officers acts.

64. Upon information and belief, a final policymaker has determined that the acts of the Defendant Officers were "within policy."

65. Accordingly, Defendants City of Placentia is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

66. The training policies of Defendant were not adequate to train its officers to handle the usual and recurring situations with which they must deal.

67. Defendant City of Placentia was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

68. The failure of Defendant City of Placentia to provide adequate training caused the deprivation of Plaintiff's rights by the Defendant Officers; that is, the City of Placentia' failure to train is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

69. On information and belief, the City of Placentia failed to train the Defendant Officers properly and adequately. By reason of the aforementioned acts and omissions, Plaintiffs has been injured.

70. Accordingly, the City of Placentia is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

71. Defendants Officers acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant City of Placentia.

72. On information and belief, the Defendant Officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Plaintiff's

injuries.

73. The City of Placentia policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a) Using excessive force, including excessive deadly force, and violating persons' First, Fourth, and Fourteenth Amendment;

(b) Providing inadequate training regarding the use of force;

(c) Employing and retaining as police officers individuals such as Defendant Officers, who Defendant City of Placentia at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

(d) Inadequately supervising, training, controlling, assigning, and disciplining City of Placentia officers, and other personnel, including Defendant Officers, who Defendant City of Placentia knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(e) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by Defendant Officers;

(f) Failing to adequately discipline City of Placentia police officers, including Defendant Officers, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g) Announcing that the use of unreasonable, unjustified, and excessive force are "within policy," including conduct that was later determined to be unconstitutional;

(h) Even where use of force is determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

74. By reason of the aforementioned acts and omissions, Plaintiffs has suffered physical and emotional injuries in an amount to be proven at trial.

75. Defendants City of Placentia and DOES 11 through 20, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs, and other individuals similarly situated.

76. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant Officers acted with intentional, reckless, and callous disregard for Plaintiff's constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants City of Placentia and DOES 11 through 20 were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiffs.

77. Accordingly, Defendants City of Placentia and DOES 1 through 20 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

## FIFTH CLAIM FOR RELIEF

### Negligence (Wrongful Death and Survival Claim)

(*Plaintiffs against all Defendants*)

78. Plaintiffs realleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

79. Police officers, including DOES 1-20, have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

80. DOE OFFICERS breached this duty of care. The actions and inactions of Defendants DOE OFFICERS were negligent and reckless, including but not limited to:

    a. the failure to properly and adequately assess the need to use deadly force against Decedent;

    b. the negligent tactics and handling of the situation with Decedent, including pre-shooting negligence;

    c. the negligent use of deadly force against Decedent, including negligently shooting at a mentally ill individual;

    d. the failure to properly train and supervise DOE OFFICERS with respect to mentally disabled or incapacitated persons and the use of deadly force;

    e. the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of Decedent; and

    f. the negligent communication of information during the incident.

81. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Decedent was caused to suffer severe pain and suffering and ultimately died. Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Decedent, and will continue to be so deprived for the remainder of their natural lives.

82. The CITY is vicariously liable for the wrongful acts of DOE OFFICERS and Defendants DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or her to liability.

83. Plaintiffs bring this claim individually and as a successor-in-interest to Decedent. Plaintiffs seek wrongful death and survival damages on this claim, including for Decedent's loss of life and loss of enjoyment of life.

84. Plaintiffs bring this claim individually and seek wrongful death damages under this claim, including funeral and burial expenses.

## SIXTH CLAIM FOR RELIEF

### Battery (Wrongful Death and Survival Claim)

### (*Plaintiffs against all Defendants*)

85. Plaintiffs realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

86. DOE OFFICERS, while working and acting within the course and scope of his duties as a police officer for the CITY/PPD, shot at Decedent. The shootings were excessive and objectively unreasonable.

87. As a direct and proximate result of the shots fired by DOE OFFICERS as alleged above, Decedent sustained injuries, died from his injuries and also lost his earning capacity. As a direct and proximate result of DOE OFFICERS' misconduct as set forth herein, Decedent suffered survival damages pursuant to Code of Civil Procedure Section 377.34.

88. The CITY is vicariously liable for the wrongful acts of DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

89. The conduct of DOE OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and Decedent, entitling Plaintiffs, individually and as the successors in interest to Decedent, to an award of exemplary and punitive damages as to DOE OFFICERS.

90. Plaintiffs bring this claim individually and as a successor-in-interest to Decedent. Plaintiffs seek wrongful death and survival damages on this claim, including for Decedent's loss of life and loss of enjoyment of life.

91. Plaintiffs bring this claim individually and seek wrongful death damages

under this claim, including funeral and burial expenses.

### SEVENTH CLAIM FOR RELIEF

**Violation of Bane Act – (Cal. Civil Code § 52, et seq.)**

(*Plaintiffs against all Defendants*)

92. Plaintiffs realleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

93. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from intentionally interfering with a person's constitutional rights, which can be shown by a reckless disregard for that person's constitutional rights. Here, DOE OFFICERS acted with a reckless disregard for Decedent's constitutional rights when they repeatedly shot him with projectile weapons and firearms, which shows DOE OFFICERS's intent to violate Decedent's constitutional rights.

94. On information and belief, DOE OFFICERS, while working for the CITY and acting within the course and scope of his duties, intentionally committed and attempted to commit acts of violence against Decedent, including escalating the circumstances by shooting at his head with projectile weapons and ultimately fatally shooting him with a firearm.

95. When DOE OFFICERS shot Decedent, they interfered with his constitutional rights to be free from unreasonable searches and seizures, due process, to equal protection of the laws, to be free from state actions that shock the conscience, and to life, liberty, and property.

96. On information and belief, DOE OFFICERS intentionally shot at Decedent and violated his constitutional rights. On information and belief, Decedent reasonably believed and understood that DOE OFFICERS intended to shoot Decedent and intentionally shot him to violate his constitutional rights and/or to prevent him from exercising his constitutional rights.

97. DOE OFFICERS' actions against Decedent were unreasonable and showed reckless disregard for Decedent's constitutional rights.

98. The conduct of DOE OFFICERS was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

99. The CITY is vicariously liable for the wrongful acts of DOE OFFICERS and Defendants DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability. Defendants CITY and DOES 11-20 are vicariously liable under California law and the doctrine of *respondeat superior*.

100. The conduct of DOE OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for Decedent's and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to DOE OFFICERS.

101. Plaintiffs bring this claim individually and as a successor-in-interest to Decedent. Plaintiffs seek wrongful death and survival damages on this claim, including for Decedent's loss of life and loss of enjoyment of life.

102. Plaintiffs bring this claim individually and seek wrongful death damages under this claim, including funeral and burial expenses.

103. In doing the acts herein alleged, the individual PPD Officers acted with malice and oppression in knowingly, purposefully, and intentionally committing the conduct. Said conduct was vile and despicable in that Defendants knew that their conduct would cause Plaintiffs harm and cause her to suffer extreme emotional distress but continued their unlawful conduct. Defendants acted with oppression and malice and is therefore liable for punitive damages.

104. Plaintiffs also seek attorney's fees and a multiplier under this claim pursuant to Cal. Civ. Code §52 *et seq*.

/ / /

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs JIMMY WONG and CAROL CHAPMAN prays for judgment in their favor and against Defendants CITY OF PLACENTIA and DOES 1-20, inclusive, as follows:

1. For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;
2. For funeral and burial expenses, and loss of financial support;
3. For punitive damages against the individual defendants in an amount to be proven at trial;
4. For interest;
5. For reasonable attorneys' fees, including litigation expenses;
6. For costs of suit; and
7. For such further other relief as the Court may deem just, proper, and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs JIMMY WONG and CAROL CHAPMAN hereby demand a jury trial.

DATED: April 12, 2022

**KIRAKOSIAN LAW, APC**

By: _____
GREG L. KIRAKOSIAN
Attorneys for Plaintiffs